IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JERALD D. TILTON,

                            Petitioner,

              v.                              CASE NO. 05-3043-RDR

COMMANDANT, UNITED STATES
DISCIPLINARY BARRACKS,

                            Respondent.


O R D E R

     This matter is a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241.

     Petitioner was convicted by a general court-martial of sodomy, indecent acts, and indecent liberties in violation of Articles 125 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934.  He was acquitted of other charges.  The approved sentence includes confinement for 18 years, forfeiture of all pay and allowances, reduction to E-1 and a dishonorable discharge.

**Procedural Background**

     Proceeding pro se, petitioner commenced this action by filing a petition presenting five issues for review, namely: (1) his conviction was obtained by the use of coerced testimony; (2) his conviction was obtained by the knowing use of perjured testimony; (3) he was denied the right of appellate review under Article 66(c) of

the Uniform Code of Military Justice and denied the right of appeal by the United States Court of Appeals for the Armed Forces; (4) he was denied effective assistance of counsel at trial and during appeal; (5) he is unlawfully confined despite his innocence and contrary to public policy under the totality of circumstances. (Doc. 1, p. 6). Respondent filed an Answer and Return (Doc. 9), and petitioner then filed a traverse (Doc. 14) and an amendment to the petition (Doc. 15).

The amended petition presented the same issues alleging coerced and perjured testimony and wrongful confinement. However, petitioner expanded upon the claim concerning the alleged denial of the right of appellate review and to due process by alleging (1) the trial judge erred in instructing the members of the panel on the probability of innocence and the proper evaluation of evidence and (2) the Air Force Court of Criminal Appeals failed to apply the same standard of reasonable doubt throughout its review. He also expanded upon his claim of ineffective assistance of trial and appellate counsel by alleging (a) the trial defense team failed to properly investigate the case, interview character witnesses, or develop a defense plan and (b) appellate counsel failed to present claims concerning coercion, improper instructions, and constitutional violations. Finally, petitioner presented a new claim alleging he was denied due process and equal protection. Respondent filed a response to the traverse (Doc. 18), and petitioner filed a reply (Doc. 19).

Thereafter, petitioner, by counsel, sought leave to file an

amended petition for habeas corpus and requested a stay (Doc. 24). The court granted that request and petitioner's motion to conduct discovery.

The amended petition and supporting memorandum (Docs. 34 – 36) now before the court present these claims for relief: (1) whether the law supports the applicant's petition for habeas corpus; (2) whether petitioner was denied the effective assistance of counsel at the trial and appellate levels; (3) whether there was sufficient evidence to support the petitioner's conviction of acts against RT; and (4) whether the petitioner's conviction of indecent acts against HW was legally sufficient. (Doc. 34, pp. 3-4).

**Factual Background**

The background facts in this matter are not contested. The following summary is taken from the decision of the United States Air Force Court of Criminal Appeals in this matter, *United States v. Tilton*, issued on January 22, 2002.[1]

> The appellant and Flora Tilton were married in December 1985. In August 1989, appellant's son, RT, was born. In July 1992, the appellant was transferred to Robins Air Force (AFB) Base, Georgia where he and his family remained until July 1996. The appellant was then transferred to Fort Polk Army Post (AP), Louisiana. At Fort Polk AP, the appellant and his family lived in two different residences. First, in South Fort Polk, until the Spring of 1998, and then North Fort Polk, where these allegations surfaced in October 1998.

> Within a few months of moving to Fort Polk AP, Flora contracted gonorrhea from the appellant. Shortly thereafter, the appellant admitted to Flora that he had engaged in two adulterous affairs, including one while on temporary duty (TDY) to Jordan from April through June

---

[1]The decision is appended to Doc. 1 as Ex. B.

1996.  After they both received treatment for the disease, they began marital counseling with their pastor.

In October 1996, Flora discovered an e-mail message in the appellant's home e-mail account informing the appellant that the woman he had had an affair with in Jordan tried to commit suicide.  Flora became very upset because as part of their counseling agreement the appellant had agreed not to use this account, and she began to wonder what else the appellant had kept from her. Flora began to remember past instances of unusual behavior by her son, RT.  Recalling some foster parent training she had received on how to recognize signs of sexual abuse, she told RT that the appellant had hurt her and asked if the appellant had ever touched RT in a way that made him feel uncomfortable.  After first denying that the appellant had touched him inappropriately, RT stated that the appellant had touched him near his "private area" while RT was dressed.  In a second conversation with his mother, RT told her that the appellant had been doing bad things to him including putting the appellant's private into RT's bottom.  Flora related RT's statements to the pastor who was providing marital counseling to her and the appellant.  The pastor then confronted the appellant with RT's allegation, and the appellant denied it.  Finally, on 30 October 1998, RT spoke with Army law enforcement authorities at Fort Polk AP about the appellant's alleged misconduct. *United States v. Tilton*, (ACM 33816) Doc. 1, Ex. B., p. 2.

Other relevant facts are incorporated into the discussion of the issues.

**Standard of Review**

Pursuant to 28 U.S.C. § 2241, habeas corpus relief may be granted to a federal prisoner upon a showing that the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c).

"[F]ederal courts have jurisdiction over applications for habeas corpus by persons incarcerated by the military courts, though 'in military habeas corpus the inquiry, the scope of matters open to

4

review, has always been more narrow than in civil cases.'" *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993)(citing *Burns v. Wilson*, 346 U.S. 137, 139 (1953)). *See also Fricke v. Secretary of Navy*, 509 F.3d 1287, 1289-90 (10th Cir. 2007)("We now reiterate that our review of military convictions is limited generally to jurisdictional issues and to determination of whether the military gave fair consideration to each of the petitioner's constitutional claims." (Citation and internal punctuation omitted.))

Case law in the Tenth Circuit establishes that an issue is viewed as having received full and fair consideration where it was briefed and argued, although the military court summarily determines the claim. *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184 (1986). This extends even to circumstances in which a military court disposes of an issue "with the mere statement that it did not find the issue meritorious or requiring discussion." *Lips*, 997 F.2d at 821, n. 2 (citing *Watson,* 782 F.2d at 145). "[I]t is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Burns*, 346 U.S. at 142; *Khan v. Hart*, 943 F.2d 1261, 1263 (10th Cir. 1991).

A federal court generally will not consider claims in habeas if the claims were not presented to the courts-martial. *Watson*, 782 F.2d at 145. However, the petitioner may overcome such a procedural default by showing cause for the default and actual prejudice resulting from the default. *Lips*, 997 F.2d at 812.

Finally, the Tenth Circuit Court of Appeals has identified four factors relevant to the inquiry of review in a habeas corpus action brought by a military prisoners:

> (1) the asserted error must be of substantial constitutional dimension.... 2. The issue must be one of law rather than of disputed fact already determined by the military tribunals.... (3) Military considerations may warrant different treatment of constitutional claims.... (4) The military courts must give adequate consideration to the issues involved and apply proper legal standards. *Roberts v. Callahan,* 321 F.3d 994, 996 (10th Cir. 2003), *citing Dodson v. Zelez,* 917 F.2d 1250, 1252-53 (10th Cir.1990).

*The law supports the petition for habeas corpus*

Petitioner first asserts the law supports his petition for habeas corpus. His argument asserts that any claims for relief that were not presented in the military courts should be considered in this action because the default was caused by the ineffective assistance of counsel. He also claims that a cumulative error analysis should be applied in this case.

Respondent contends the claims that were procedurally defaulted should not be considered but also argues that even if the claims may be considered on habeas corpus review, they would not entitle the petitioner to relief.

As noted, this court cannot review claims that were not raised in the military courts unless the petitioner establishes cause and prejudice. *Lips*, 997 F.2d at 812. Petitioner appears to allege certain claims, including challenges to instructions, to the standards of review applied by the AFCCA, and to funding for expert

witnesses,[2] were not raised due to ineffective assistance of counsel.

Cause may be established by "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance [with the procedural requirement] impracticable." *Murray v. Carrier,* 477 U.S. 478, 488 (1986)(internal citations omitted).

To demonstrate prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).  Finally, to establish a "fundamental miscarriage of justice", a petitioner must demonstrate that he is "actually innocent" of the crime underlying his conviction. *McCleskey v. Zant,* 499 U.S. 467, 494 (1991).  Such a claim of actual innocence may be established by "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Ineffective assistance of counsel is an external factor that may constitute "cause" in the procedural default analysis.  *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995).  However, the failure of counsel to present claims that are not demonstrated to be viable is not sufficient to establish cause.  *Hurn v. McGuire*, 2005 WL 1076100, *4 (D.Kan.).

Having considered the record, the court is not persuaded the

---

[2]

These claims were presented in the petitioner's pro se pleadings.  The claims presented in the amended petition submitted by counsel are discussed separately.

procedurally defaulted claims should be considered.  First, the claims, taken in the context of the entire record, appear to present harmless error and to be insufficient to establish prejudice.  Next, the court cannot conclude that the failure to advance the defaulted claims constituted ineffective assistance of counsel.  An attorney need not present every possible claim to avoid a charge of ineffective assistance.  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

**Ineffective assistance of counsel**

Petitioner claims he received constitutionally inadequate representation from both trial and appellate counsel.

"The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1994).  To prevail on such a claim, a defendant must meet a two-pronged test by showing, first, "that counsel's representation fell below an objective standard of reasonableness," *id*. at 688, and second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A petitioner satisfies the first criterion by showing that

counsel's performance was below the level expected from a reasonably competent attorney. *Id.* at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688. A court is to "judge ... [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Review of such a claim is deferential, as "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

A petitioner satisfies the second prong by showing prejudice to the defense, that is, by showing that "but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Id.* at 689. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002).

Petitioner claims trial counsel was ineffective on the following bases: (1) counsel failed to conduct a proper investigation of the case; (2) counsel failed to assert petitioner's good military character as a defense; (3) counsel failed to move the court-martial for greater access by the defense expert to RT for testing and an interview; (4) counsel failed to object to statements in closing argument; (5) counsel failed to object when the military judge added language to standard instructions by including a reference to the extent to which petitioner could be found guilty; and (6) counsel

failed to properly select or question expert witnesses regarding the lack of physical evidence, failed to develop testimony on the reprogramming effect that may influence a child victim's statements, and failed to introduce a forensic psychological evaluation of petitioner.

Petitioner also asserts that appellate counsel provided ineffective assistance by failing to secure an expert opinion concerning the performance of trial counsel and his use of the testimony given by the defense expert witness.

The AFCCA considered petitioner's claims of ineffective assistance and concluded trial defense counsel made a reasonable decision not to present character witnesses, noting that counsel presented petitioner's outstanding performance reports to establish his good character; and that counsel pursued motions to sever and then limit evidence concerning a charge of indecent language.[3]

The AFCCA also reviewed trial defense counsel's questioning of Dr. Susan Vigen, the civilian psychologist retained as an expert witness by the defense. Dr. Vigen had ten years of experience working in the field of child sexual abuse and specialized in the evaluation and treatment of child sex abuse victims.

During the defense case-in-chief, Dr. Vigen testified concerning the proper techniques for interviewing children identified as victims of sexual abuse.

During cross-examination, she discussed statistical studies

---

[3]Petitioner was acquitted of this charge.

comparing child sexual abuse victims with children who have not suffered abuse.  On re-direct examination, defense counsel asked Dr. Vigen how many cases involving validated allegations of abuse involve physical evidence of the abuse.  She responded that the vast majority of such cases do not present such evidence, but she later testified that in cases involving repeated episodes of penetration, physical damage would be more likely to occur.  Upon re-cross-examination, Dr. Vigen qualified her earlier testimony by stating that while the majority of child sexual abuse cases do not involve physical evidence, the majority of cases do not involve penetration of the victim.

The AFCCA carefully considered petitioner's claims that defense counsel was ineffective in questioning Dr. Vigen and that she was not a qualified witness to testify on the lack of physical evidence in child sexual abuse cases.  The AFCCA concluded that defense counsel used questions to Dr. Vigen in a strategy to show the repeated acts of sodomy alleged to have been committed against RT would have been likely to produce physical damage to him.  Counsel elicited testimony to that effect and emphatically argued the point in closing.

Finally, the AFCCA considered a letter prepared by Dr. Lawrence Ricci for use in post-trial clemency proceedings.  Dr. Ricci cited a rate of physical damage occurring in 50-85% of cases involving anal sodomy of child victims and offered the opinion that if RT actually suffered the abuse alleged, he would have suffered physical damage.

Although petitioner alleges error on the part of appellate counsel in failing to challenge the testimony given by Dr. Vigen, it

is clear the AFCCA considered Dr. Ricci's letter and found his opinion was essentially consistent with Dr. Vigen's testimony.

The defense of the case against petitioner was complex and clearly required numerous tactical decisions on such matters as the use of character witnesses and how best to present petitioner's outstanding military record while minimizing opportunities for damaging cross-examination. The defense of petitioner also required considerable skill in questioning both expert witnesses and child witnesses. While hindsight suggests potential objections and additional avenues of inquiry that might have been pursued, the record, viewed as a whole, does not persuade this court that petitioner was denied either the effective assistance of counsel at trial or on appeal or that the military courts failed to provide a full and fair review of these claims.

*Evidentiary sufficiency of acts against RT*

Petitioner contends there was insufficient evidence to sustain his convictions for acts against RT.

A habeas corpus court deciding a claim of insufficient evidence must determine whether, after considering all the evidence in the light most favorable to the prosecution, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Barner*, 56 M.J. 131, 134 (CAAF 2001).

The evidence against the petitioner concerning acts against RT may be summarized as follows:

*Sodomy of RT*

The petitioner was convicted of one specification of sodomy with RT on divers occasions at Robins AFB and one specification of RT on divers occasions at Fort Polk AP.  On appeal, the AFCCA determined the evidence did not factually support the conviction of sodomy on divers occasions at Fort Polk and amended Charge I, Specification 2 to allege that petitioner committed that act "between on or about 1 August 1996 and on or about 31 October 1998".  *United States v. Tilton*, Doc. 1, Ex. B., p. 4.

The AFCCA concluded the evidence was sufficient to support the remaining charges of sodomy.  The appellate decision acknowledged that RT's testimony was inconsistent  and contradictory.  However, the testimony offered by RT, who was nine years old at the time of the court-martial, was that he and the petitioner often showered together, that the petitioner sometimes sprayed him with shaving cream, and that once they were out of the shower, the petitioner had him lie face down on the floor and then lay down on top of him.

RT testified the petitioner inserted his penis into RT's anus. He described the sensation of petitioner's penis as hairy and testified that after these events, he felt something slimy dripping from his anus and would go back into the shower to wash off.

RT's mother testified concerning her observations of RT behavior.  Her testimony included a description of an incident in which RT and his brother were found naked on the floor.  RT's brother was on the bottom, face down, and RT lay naked on top of his brother, with RT's penis near his brother's anus.  According to this witness, RT was approximately seven years old at the time of this event but

13

was unable to say how he learned such behavior.

The members also heard the testimony of defense expert Dr. Vigen, who stated that child sexual abuse victims may repeat the acts perpetrated upon them in an effort to regain control.

*Indecent acts against RT*

Petitioner was convicted of indecent acts with RT on divers occasions at Robins AFB by fondling RT's penis and placing his penis against RT's buttocks.  He also was convicted of the commission of indecent acts with RT on divers occasions at Fort Polk AP by fondling RT's buttocks and inserting his finger into RT's anus.  The AFCCA concluded the evidence was insufficient to support the conviction for conduct at Fort Polk AP and set aside that conviction.

The AFCCA found the evidence sufficient to show petitioner fondled RT's penis at Robins AFB based upon RT's testimony and testimony by the petitioner that supported some of RT's description of the events.  However, the AFCCA found the evidence insufficient to support the specification that the petitioner fondled RT's penis at Fort Polk AP, noting RT's denial of such contact at Fort Polk AP.  The AFCCA also found there was insufficient evidence of action independent of the offense of sodomy and dismissed Charge II, Specification 2, alleging the commission of indecent acts with RT at Fort Polk AP.  *United States v. Tilton, id.* at p. 6.

*Indecent liberties with RT*

Petitioner was convicted of indecent liberties on divers occasions with RT at Robins AFB and at Fort Polk AP by masturbating in his presence.  The AFCCA found these convictions were supported

14

by the testimony of RT, who described the acts; by the testimony of Flora Tilton, who testified concerning her observations of RT masturbating in the shower; and by the testimony of AB, a friend of RT who testified that she had seen RT masturbating to "'do tricks with his wienie.'" *United States v. Tilton*, *id.* at p. 7.

The AFCCA rejected the argument that RT was coached improperly during a break by trial counsel and by Flora Tilton, finding no evidence that testimony given by RT following a break of approximately twenty minutes was programmed or otherwise improperly influenced. The AFCCA also concluded that petitioner's defense counsel effectively used cross-examination to demonstrate bias on the part of Flora Tilton.

This court has examined the pleadings, including the portions of the record offered, and has considered the arguments of the parties. The court agrees the evidence adduced here was not overwhelming. First, there was no physical evidence of abuse of RT. Next, there was a substantial question concerning the motivation of Flora Tilton, who apparently articulated no suspicion of abuse on RT until the petitioner's infidelity with other adult females was presented and who then waited a considerable period of time to report the abuse to military authorities. RT's older brother first reported abuse by the petitioner but then recanted. Finally, there are significant concerns surrounding the possibility that RT's report was the product of influence arising from a series of conversations and interviews with persons not qualified to conduct such questioning.

However, when viewed in the light most favorable to the

15

government, the testimonial evidence in this case, if believed, is sufficient to allow a rational trier of fact to find the petitioner guilty of the specifications charged. The testimony of RT described physical acts which satisfy the elements of the offenses charged, and the observations of sexual behaviors recounted by RT's peer AB and by his adult relatives could reasonably be interpreted to support allegations that RT was a victim of abuse.

Accordingly, under the standard of review established in *Jackson v. Virginia* and mindful of the careful analysis given to these claims in the courts-martial, this court concludes petitioner is not entitled to relief on this claim.

*Legal sufficiency of indecent acts against HW*

Petitioner was convicted of the commission of indecent acts on HW. HW and petitioner attended the same church. HW was eleven years old at the time of the events in question and twelve years old when she testified against the petitioner. She testified that on different occasions, petitioner tickled her sides, swatted her on the bottom for a second or two, rubbed the middle of her bottom for 15 to 20 seconds, and approached her from behind as she sat on a kneeler and rubbed her back on her back bra strap for approximately 13 seconds and stopped when she twitched her shoulder. (Doc. 42-2, pp. 2-17, ROT 323-38.)

The members convicted petitioner of the commission of indecent acts against HW on divers occasions by fondling her buttocks and touching her bra strap. (Charge II, Spec. 9.) The members excepted other language from the specification.

16

The elements of the offense charged are as follows:

*(B) Elements.*
(1) Physical contact.
(a) that the accused committed a certain act upon or with the body of a certain person;
(2) that the person was under 16 years of age and not the spouse of the accused;
(3) that the act of the accused was indecent;
(4) that the accused committed the act with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of the accused, the victim, or both; and
(5) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.   Manual for Courts-Martial, ¶ 87b(1)(a)-(e).

Under military case law, the members must consider "all the facts and circumstances of a case including the alleged victim's consent" in determining the issue of indecency.  *United States v. Baker*, 57 M.J. 330, 336 (2002).

The court finds the decision of the members is supported by the record, as the testimony of HW establishes reasonable grounds for the satisfaction of each element.  Moreover, because it is apparent this claim was given full and fair consideration in the military courts[4], the court concludes petitioner is not entitled to relief.

*Cumulative error*

Finally, after consideration of the record, the court concludes that petitioner is not entitled to relief on a theory of cumulative error.  Such an analysis may be allowed to grant relief where a court has found two or more actual errors.  *See Moore v. Reynolds,* 153 F.3d 1086, 1113 (10th Cir.1998)("Cumulative error analysis applies where

---

[4]

*United States v. Tilton*, Doc. 1, Ex. 3, pp. 8-9).

17

there are two or more actual errors; it does not apply to the cumulative effect of non-errors."), *cert. denied,* 516 U.S. 1025 (1999).

### Conclusion

The court has considered the record and the arguments of the parties but finds no basis to grant relief. The petitioner has presented compelling arguments; however, examined within the standard of review that must be applied in cases decided in the courts-martial, the application for habeas corpus must be denied.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is dismissed and all relief is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED**.

DATED:  This 31st day of March 2008, at Topeka, Kansas.

S/ Richard D. Rogers
RICHARD D. ROGERS
United States District Judge